UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeffrey Chaney, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Blue Cross and Blue Shield of Minnesota,<br><br>Defendant. | Case No. 0:17-cv-1914<br><br>**CLASS ACTION COMPLAINT**<br><br>**AND**<br><br>**JURY DEMAND** |

NOW COMES plaintiff Jeffrey Chaney, on his own behalf and on behalf of all others similarly situated, asserts to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

### A. INTRODUCTION

**1.** This lawsuit presents a narrow issue that is of critical importance – may a health insurer deny coverage for mental health treatment in circumstances where there is no corresponding limitation for treatment for physical injury and <u>not</u> violate the federal Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act")? Defendant's denial of coverage for services rendered at an outdoor behavioral therapeutic program breaches the protections of the Parity Act, which are – as a matter of law – embedded as a material term of the contract of insurance that governs the rights and responsibilities of these parties.

1

2. Plaintiff received his health insurance through his employer, The Pohlad Companies, a private company located principally within this judicial district. This self-funded plan is administered by defendant Blue Cross and Blue Shield of Minnesota ("BCBS"). As described in the certificate of coverage, a standardized form document attached at **Att. A**, BCBS has complete discretion to interpret the certificate and its determination "will be final, binding and conclusive." (**Att. A, p. 20**). Plaintiff's daughter, M.C., date-of-birth November 4, 1995, is a covered beneficiary under this plan, as well.

3. On information and belief, BCBS's certificate of coverage attached at **Att. A** is materially identical to the other benefit booklets provided to the self-funded plans it administers.

### JURISDICTION AND VENUE

4. This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

5. Venue is appropriate in this district because BCBS is located here, and many of the breaches at issue took place here. 29 U.S.C. § 1132(e)(2).

6. In conformity with 29 U.S.C. § 1132(h), plaintiff has served this Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

### PARTIES

7. At all relevant times, plaintiff was a full-time employee for The Pohlad Companies. He currently lives in suburban St. Louis, Missouri. His employer-sponsored health insurance at issue in this litigation was administered by BCBS and is thus regulated by ERISA, 29 U.S.C. §§ 1001-1191c. Plaintiff's daughter was also covered under his plan. Under ERISA, plaintiff is a "plan participant" 29 U.S.C. § 1002(7) and his daughter is a "beneficiary." 29 U.S.C. § 1008.

8.      Defendant BCBS is a non-profit company incorporated in Minnesota with its principal place of business located in with judicial district. In this Complaint, "BCBS" refers to the named defendant and all related, successor, predecessor, parent and subsidiary entities to which these allegations pertain.

9.      BCBS had full discretionary authority to administer the plan and accordingly owes fiduciary obligations to plan participants and beneficiaries.

## FACTS

**A.   Coverage**

10.     Under the terms of the plan, BCBS is, generally, required to authorize coverage for "covered services" that are medically necessary. The plan's definition of "covered services" is a "service or supply that is eligible for benefits when performed and billed by an eligible provider." (**Att. A, p. 83**). Medically necessary, in turn, are "[h]ealth care services that a Physician, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are: (a) in accordance with generally accepted standards of medical practice; (b) clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease; and (c) not primarily for the convenience of the patient, physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease." (***Id.*, p. 87**). In turn, a provider is a "health care professional licensed, certified or otherwise qualified under state law, in the state in which services are rendered to provide the health services billed by that provider and a health care facility licensed under state law in the state in which it is located to provide the

health services billed by that facility. Provider includes pharmacies, medical supply companies, independent laboratories, ambulances, freestanding ambulatory surgical centers, home infusion therapy providers, and also home health agencies." (*Id.*, **p. 90**).

11. The plan specifically covers behavioral health benefits. (*Id.* **at M-9, M-11**).

12. The plan specifically excludes "[c]are provided or billed by residential treatment centers or facilities, unless those centers or facilities are required to be covered under state law." (*Id*. **at M-46**).

13. Plaintiff's daughter, who is covered under her father's plan and is thus entitled to receive health insurance coverage based on the same plan language as her father's, has struggled for years with mental health issues such as depression, anxiety disorder, bulimia nervosa, alcohol and drug abuse, and self-harm. In August 2015, at the recommendation of her therapist and educational consultant, plaintiff's daughter agreed to go to Open Sky Wilderness, a Colorado-based licensed outdoor behavioral therapy program center that specializes in the therapeutic treatment of young men and women with comparable diagnoses.

14. While at Open Sky, M.C. received medically necessary mental health services, including psychiatric evaluation, individual therapy, group therapy and family therapy, all of which would have been authorized for coverage by BCBS if they had been delivered in another type of setting.

15. Plaintiff paid $40,255 for services rendered at Open Sky from August through November 2015 and sought coverage. His claims were denied by BCBS, first on August 18, 2016, because, it said, "[t]his Plan does not provide benefits for room and board for skills training and lodging programs." That decision was affirmed by BCBS in a February 1, 2017 letter, which said that "[b]ecause services for or related to room and board for foster care, group

4

homes, incarceration, shelter care, and lodging programs, halfway house services, and skills training are excluded by the Plan, we are unable to extend benefits for the requested service." This final denial specifically provided that its decision was not based on the medical necessity of the services.

16. BCBSs blanket exclusion of outdoor behavioral therapy violates the federal Parity Act and BCBS's own plan language. The Parity Act was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans and health insurance coverage offered in connection with group health plans." *American Psychiatric Ass'n v. Anthem Health Plans,* 50 F. Supp.3d 157, 160 (D. Conn. 2014). In relevant part, the Parity Act states:

> In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that—
>
>> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).

17. The issue as to whether an insurer may lawfully deny all mental health treatment rendered based on the location in which services were rendered was considered in *Joseph & Gail F. v. Sinclair Servs. Co.,* 2016 U.S. Dist. LEXIS 8644 (D. Utah Jan. 22, 2016). There the court found that such a blanket exclusion violated the Act:

> To be sure, the Parity Act does not require plans to provide mental health or substance use disorder benefits at all. But once a plan does provide such benefits, the plan must do so on a level that is on par with the benefits it provides for medical and surgical benefits. And once provided, the Parity Act prohibits imposing treatment limitations applicable only to mental health benefits.
> Further, although the Administrator argues that the exclusion applies across the board,

5

> there is no evidence to suggest that coverage for residential treatment would have been available for medical or surgical conditions but for the exclusion. Without evidence to that effect, the Administrator's argument that it would have also denied residential treatment benefits for medical or surgical conditions under the exclusion is illusory.
>
> The court concludes that the Plus Plan's residential treatment exclusion violates the Parity Act because the exclusion is a "separate treatment limitation[] that [is] applicable only with respect to mental health . . . benefits."

*Id.* at *51.

18. BCBS's coverage position violates the Parity Act in exactly the same manner. Its blanket exclusion for services rendered at wilderness treatment programs is a separate treatment limitation applicable only to mental health benefits and thus violative of the Parity Act.

19. Plaintiff's ERISA-governed health plan incorporates the protection of the Parity Act through 29 U.S.C. § 1185a(a)(3)(A).

## CLASS ALLEGATIONS

20. Plaintiff brings this lawsuit under Fed. R. Civ. P. 23(b)(2) on his own behalf and on behalf of the following class: *All persons who are covered under any ERISA-governed contract or plan of health benefits administered, underwritten or insured by BCBS that provides coverage for behavioral or mental health care but that categorically excludes coverage for behavioral health services rendered at outdoor behavioral programs.*

21. Plaintiff brings this lawsuit under Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of the following subclass: *All persons who are covered under any ERISA-governed contract or plan of health benefits administered, underwritten or insured by BCBS that provides coverage for behavioral or mental health care and whose claims for coverage for behavioral health services rendered at outdoor behavioral programs were denied.*

22. Membership in the proposed class and subclass is so numerous that individual joinder of all class members is impracticable except by means of a class action. The disposition

of the claims in a class action will benefit both the parties and the Court. The exact number of class members can be readily determined through discovery of BCBS's business records.

23. Plaintiff's claims are typical of all other class members. All class members' claims are unified, as all are subject to BCBS's coverage position, which violates the protections of the federal Parity Act and is irreconcilable with its own plan language, which specifically covers mental health services.

24. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the class and the sub-class. Plaintiff is a member of both the class and the subclass.

25. Plaintiff will adequately represent both the class and the subclass because he has interests in common with the proposed class members and plaintiff has retained attorneys who are experienced in class action litigation.

26. There is a well-defined community of interest in the questions of law and fact involving and affecting the class and the sub-class to be represented by plaintiff. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

   a. Whether BCBS's blanket exclusion of coverage for services rendered at outdoor behavioral therapy programs violate the Parity Act?

   b. If BCBS's acts violate the Parity Act, what is the appropriate remedy?

   c. Whether BCBS has correctly characterized outdoor behavioral therapy as comparable to "room and board for foster are, group homes, incarceration" and the like is an appropriate comparator to justify its coverage decision?

   d. What is the appropriate measure of relief?

27. The prosecution of separate actions by individual members of the class and the sub-class would create a risk of:

   a. Inconsistent or varying adjudications concerning individual members of the class and/or subclass that would establish incompatible standards of conduct for BCBS opposing the class; and

   b. Adjudication with respect to individual members of the class and sub-class that would, as a practical matter, be dispositive of the interests of other members not parties to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

28. The class action method is appropriate for the fair and efficient prosecution of this action.

29. Individual litigation of all claims that might be asserted by all members of the class and the sub-class would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years.  Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of BCBS.

30. The certification of the above class and subclass would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## LEGAL CLAIMS

### Count 1 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)

31. Plaintiff restates paragraphs 1 – 30 as if fully set forth.

32. Plaintiff's first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B). The class period for this claim extends back two years from the commencement of this action to the date of class certification. This claim is brought on behalf of both the class and subclass described above.

33.  As a matter of law, plaintiff's benefit plans incorporate the Parity Act protections, which are incorporated in ERISA at 29 U.S.C. § 1185a(a)(3)(A)(ii).

**34.** Plaintiff has standing to assert claims "to recover benefits due … under the plan" and to "clarify [his] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

**35.** BCBS has breached the terms of its health plans through its violation of the Parity Act by its blanket refusal to cover treatment at outdoor behavioral therapy programs, causing injury to the plaintiff and both the class and subclass.

### Count 2 – Breach of Fiduciary Duty Under 29 U.S.C. § 1132(a)(3)

**36.** Plaintiff restates paragraphs 1 – 30 as if fully set forth.

**37.** Plaintiff's second claim is for breach of fiduciary duty as those duties are incorporated within the ERISA statute. The class period for this claim extends back six years from the commencement of this action to the date of class certification. This claim is brought by both the class and subclass described above.

**38.** Under 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant or beneficiary "to enjoin any act or practice which violates any provision of [ERISA Title I]" or to "obtain other appropriate equitable relief … to redress such violations … [or] to enforce any provisions of" ERISA Title I.

**39.** As part of the Parity Act, effective January 1, 2009, ERISA was amended to add a provision titled "Parity in Mental Health and Substance Use Disorder Benefits." This section, 29 U.S.C. § 1185a(a)(3)(A), requires that, in the case of a group health plan or health insurance offered in connection with such a plan, "the financial requirements applicable to such mental health … benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan" and "the treatment limitations applicable to such mental health … benefits are no more restrictive than the predominant

treatment limitations applied to substantially all medical and surgical benefits covered by the plan."

**40.**     BCBS's blanket exclusion of services rendered at residential treatment centers violates this Parity Act protection, which causes injury to plaintiff, the class and the sub-class.

**WHEREFORE**, plaintiff requests the following:

a. Certification of the class and subclass described above with the appointment of plaintiff as the class representative for the class and the subclass and the undersigned attorneys as class counsel;

b. An award of benefits representing those sums that plaintiff and class members paid for services at residential treatment centers that should have been covered by BCBS;

c. Disgorgement of all profits BCBS enjoyed through the use of money that should have been used to pay plaintiff's and class's legitimate coverage claims;

d. An order requiring BCBS to cover all medically necessary services at residential treatment centers in the future;

e. Any and all other relief related to this action, including payment of reasonable fees, costs, and interest where permitted by law.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues that may be so tried.

Dated:  June 6, 2017                                      Respectfully submitted,

 */s/ Jordan M. Lewis*
Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Telephone: 954-616-8995
Facsimile: 954-206-0374
Email: *jordan@jml-lawfirm.com*

Patrick J. Sheehan
(to apply for admission *pro hac vice*)
WHATLEY KALLAS, LLP
60 State Street, 7th Floor
Boston, MA 02109
Telephone: (617) 573-5118
Facsimile: (617) 371-2950
Email: *psheehan@whatleykallas.com*

Deborah J. Winegard
(to apply for admission *pro hac vice*)
WHATLEY KALLAS, LLP
1068 Virginia Avenue NE
Atlanta, GA 30306
Telephone: (404) 607-8222
Fax: (800) 922-4851
Email: dwinegard@whatleykallas.com

*Counsel for Plaintiff*